USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN TORTORA, JR.,
a/k/a "Johnny T,"

Defendant.

SEALED INDICTMENT

18 Cr. ___ ( _ )

18 CRIM 537

COUNT ONE
(Racketeering Conspiracy)

The Grand Jury charges:

**The Enterprise**

1. At all times relevant to this Indictment, La Cosa Nostra ("LCN" or the "Enterprise") was a criminal organization whose members and associates engaged in crimes including extortion, loansharking, gambling, robbery, narcotics trafficking, assault, murder, and other offenses.

2. La Cosa Nostra, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(a)(4)——that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce. La Cosa Nostra was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as

JUDGE STEIN

a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. La Cosa Nostra, also known as the "Mob" or the "Mafia," operated through entities known as "Families." Six Families operated in the New York City and New Jersey area, namely, the Genovese Organized Crime Family of LCN, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4. Mafia Families operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate had to first be of Italian descent and typically needed to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each

Capo was responsible for supervising the criminal activities of his crew, resolving disputes between and among members of the Family, resolving disputes between members of that Family and members of other criminal organizations, and providing Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

5. Above the Capos were the highest-ranking members of the Families, commonly referred to as the "Administration." The head of the Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Family, and resolving disputes between members of the Family and members of other criminal organizations, including other Families within LCN. The Administration of each Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

6. The Boss, Underboss, and Consigliere supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various

activities. In return for their supervision and protection, the Boss, Underboss, and Consigliere typically received part of the illegal earnings of each crew.

7. At times relevant to this Indictment, JOHN TORTORA, JR., a/k/a "Johnny T.," was an associate and then a member of the Genovese Family.

Purposes of the Enterprise

8. The purposes of the Enterprise included the following:

a. Enriching the leaders, members, and associates of the Enterprise through, among other things, extortion, loansharking, gambling, robbery, narcotics trafficking, assaults, and murders, and other offenses;

b. Preserving and augmenting the power, territory, and financial profits of the Enterprise through intimidation, violence, and threats of physical and economic harm, including murder; and

c. Keeping victims and citizens in fear of the Enterprise and its leaders, members, and associates by: (i) identifying the Enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence, and

d. Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement

authorities through acts of intimidation and violence against potential witnesses to crimes committed by members of the Enterprise.

Means and Methods of the Enterprise

9. Among the means and methods by which the defendants and other Enterprise members and associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

a. To protect and expand the Enterprise's business and criminal operations, members and associates of the Enterprise murdered, threatened to murder, assaulted, and threatened to assault persons who engaged in activity that jeopardized: (i) the power and criminal activities of the Enterprise; (ii) the power of leaders of the Enterprise and the status of its members; and (iii) the flow of criminal proceeds to members and associates of the Enterprise.

b. Members and associates of the Enterprise generated or attempted to generate income for the Enterprise through dealing in controlled substances, robberies, extortion, making extortionate extensions of credit, gambling businesses, and other offenses.

c. Members and associates of the Enterprise kept victims and citizens in fear of the Enterprise and its leaders, members, and associates by: (i) identifying the Enterprise, its members, and its associates with the "Mafia"; (ii) causing and

threatening to cause economic harm; and (iii) committing and threatening to commit physical violence;

d. Members and associates of the Enterprise protected the Enterprise and its members and associates from detection and prosecution by law enforcement authorities through acts of intimidation and violence against potential witnesses to crimes committed by members of the Enterprise.

e. To avoid law enforcement scrutiny of the Enterprise's criminal activities, members and associates of the Enterprise conducted meetings surreptitiously, typically using coded language when speaking on telephones, and avoiding discussing LCN activities in locations they suspected to be monitored by law enforcement surveillance.

10. To effect the goals of the Enterprise, its members worked together and coordinated with each other to perpetrate a number of different criminal acts and schemes, including, but not limited to, the following:

**The Racketeering Conspiracy**

11. From at least in or about 1997, up to and including in or about 2018, in the Southern District of New York and elsewhere, JOHN TORTORA, JR., a/k/a "Johnny T," the defendant, and others known and unknown, being persons employed by and associated with the Enterprise described in Paragraphs One through Six of this

Indictment, to wit, La Cosa Nostra, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of La Cosa Nostra, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity consisting of:

a. Multiple acts chargeable under state law and punishable by imprisonment for more than one year involving:

i. Murder, in violation of New York Penal Law Sections 20.00, 105.15, 110.00, and 125.25;

ii. Robbery, in violation of New York Penal Law, Sections 20.00, 105.15, 110.00, 160.05, 160.10, and 160.15;

iii. Extortion, in violation of New York State Penal Law, Sections 20.00, 110.00, 105.10, 155.40, and 150.05;

iv. Illegal gambling, in violation of New York State Penal Law, Sections 20.00, 225.00, and 225.10.

b. Multiple acts indictable under the following provisions of federal law:

i. Title 18, United States Code, Section 1951

(relating to interference with commerce, robbery, or extortion);

ii. Title 18, United States Code, Sections 892, 893, and 894 (relating to extortionate credit transactions);

iii. Title 18, United States Code, Section 1955 (relating to the prohibition of illegal gambling businesses);

c. Multiple offenses involved trafficking in controlled substances in violation of Title 21, United States Code, Sections 841 and 846.

12. It was a part of the conspiracy that JOHN TORTORA JR., a/k/a "Johnny T," the defendant, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

**COUNT TWO**
**(Murder in Aid of Racketeering Activity)**

The Grand Jury further charges:

13. At all times relevant to this Indictment, La Cosa Nostra, as more fully described in Paragraphs One through Nine of this Indictment, which are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which was engaged in, and

the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

14. On or about November 11, 1997, in the Southern District of New York, JOHN TORTORA JR., a/k/a "Johnny T," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from La Cosa Nostra, and for the purpose of gaining entrance to and maintaining and increasing position in La Cosa Nostra, an enterprise engaged in racketeering activity, as described above, knowingly murdered, and aided and abetted the murder, and willfully caused the murder, of Richard Ortiz, in violation of New York Penal Law, Sections 125.25, and 20.00, that is, with the intent to cause the death of Ortiz, TORTORA, together with others known and unknown, hired others to murder Ortiz, and Ortiz was in fact stabbed to death.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

**COUNT THREE**
**(Murder for Hire)**

The Grand Jury further charges:

15. On or about November 11, 1997, in the Southern District of New York, JOHN TORTORA JR., a/k/a "Johnny T," the defendant, and others known and unknown, traveled in and caused another (including

the intended victim) to travel in interstate and foreign commerce, and used and caused another (including the intended victim) to use the mail and any facility of interstate and foreign commerce, with intent that a murder be committed in violation of the laws of any State and the United States as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value, and aided and abetted the same, and conspired to do the same, and in the course of that crime did cause personal injury and death to result, to wit TORTORA and others known and unknown offered money and things of pecuniary value to co-conspirators not named as defendants herein to kill Richard Ortiz, TORTORA agreed to cause the death of Ortiz, and thereafter one of those co-coconspirators did in fact stab Ortiz multiple times, and in the course thereof, TORTORA and other co-conspirators not named as defendants herein did use and cause the use of facilities of interstate commerce, which resulted in the death of Richard Ortiz.

(Title 18, United States Code, Sections 1958(a) and 2.)

## FORFEITURE ALLEGATIONS

### Count One

16. The allegations contained in Count One of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United

States Code, Section 1963. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to JOHN TORTORA, JR., a/k/a "Johnny T," the defendant, that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of that TORTORA is convicted under Count One of this Indictment.

17. JOHN TORTORA, JR., a/k/a "Johnny T," the defendant:

a. has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b. has an interest in, security of, claim against, and property and contractual rights which afford a source of influence over, the Enterprise named and described herein which TORTORA established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and/or

c. has property constituting and derived from proceeds obtained, directly and indirectly, from the aforesaid racketeering activity, in violation of Title 18, United States Code, Section

1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

18. The interests of JOHN TORTORA, JR., a/k/a "Johnny T," the defendant, subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a) include the amount of gross proceeds received by TORTORA derived from racketeering activities as alleged in Count One of this Indictment.

**Count Three**

19. As a result of committing the offense alleged in Count Three of this Indictment, JOHN TORTORA, JR., a/k/a "Johnny T," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

**Substitute Assets Provision**

20. If any of the property described above as subject to forfeiture, as a result of any act or omission of the above-named defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 1963(m), and 28 U.S.C. § 2461, to seek forfeiture of any other property of JOHN TORTORA, JR., a/k/a "Johnny T," the defendant, up to the value of the forfeitable property.

(Title 18, United States Code, Section 1963.)

GEOFFREY S. BERMAN
United States Attorney

Foreperson

July 26, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN TORTORA, JR.,
a/k/a "Johnny T,"
Defendant.

**SEALED INDICTMENT**

18 Cr. ____ ( )

(Title 18, United States Code, Sections 1962(d), 1959(a), 1958(a), and 2.)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

**Foreperson.**

7/20/18 Filed Indictment. Warrants issued
(Ott, USMJ)